**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **C.L.W.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-848-ALM** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

C. L.W.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA"). (Doc. 1). The Commissioner filed the Administrative Record ("AR") (Doc. 5), and the parties have fully briefed the issues. (Docs. 6, 11, 14).[2] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 12, 13). Based on the Court's review of the record and issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

---

[1] For privacy purposes in light of the sensitive information disclosed in Social Security cases, the Court refers to Plaintiff by initials only.

[2] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

## I. The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant for social security benefits is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[3] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id.* "The claimant

[3] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).

is entitled to disability benefits only if [the claimant] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## II. Procedural History

Plaintiff filed applications for disability insurance benefits and supplemental security income, which were denied initially and on reconsideration. (AR, at 21). An administrative hearing was held on October 9, 2024, (*id*. at 38-64), at which Petitioner

amended her alleged onset date to August 1, 2022. (*Id.* at 21). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 21-32). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

**III. The Administrative Decision**

Relevant to Plaintiff's claims, the ALJ found at Step Two of the analysis that Plaintiff had multiple severe mental impairments. (AR, at 24). After finding at Step Three that Plaintiff's impairments did not meet or medically equal any of the listed impairments, (*id.* at 25), the ALJ determined Plaintiff had the RFC to perform a full range of work, limited such that she could:

> understand, recall, and perform simple and detailed, but not complex, tasks and make related decisions; have no contact/interaction with the public; have no more than occasional interaction with peers/co-workers; must avoid "teamwork type" jobs, jobs wherein the claimant would work in tandem with, in conjunction with, one or more co-workers on the very same job task or duty; interact with supervisors to learn tasks, attend meetings, and accept criticism; deal with no more than occasional changes in work processes and environment; must avoid work that is fast pace, production pace, assembly line pace type work; must avoid work with strict production/performance quotas, i.e., work wherein the employer sets a very strict pace of work from which cannot be varied, such as having to complete 1/16th of one's day's work every single half hour, but rather, can perform work wherein the employee can vary the pace of work (speed up or slow down as need be) albeit that that all assigned work is completed by the end of the workday or workweek, whichever is applicable; and, at the end of the workday or workweek, whichever is applicable, would have a reduction in overall production, including error rate, of no more than about 9% less (about 5 minutes an hour) than that the average employee.

(*Id.* at 27). The ALJ determined that Plaintiff could not perform her past relevant work, but there were jobs that existed in significant numbers in the national economy that she could perform. (*Id.* at 30-31). Thus, the ALJ found Plaintiff was not disabled. (*Id.* at 31).

## IV. Claims Presented for Judicial Review

Plaintiff contends the ALJ committed reversible error by (1) failing to provide a narrative discussion describing how the record evidence supports the conclusions of the RFC, as required by Social Security Ruling ("SSR") 96-8p, and (2) failing to properly assesses Plaintiff's symptoms under SSR 16-3p. (Doc. 6, at 3-15). The Commissioner argues that substantial evidence supports the ALJ's RFC determination and the ALJ did not violate the agency's articulation requirements in discussing the evidence. (Doc. 11, at 6-15).

The Court finds the decision is not supported by substantial evidence, at least insofar as it relates to the limitation that Plaintiff has a reduction in overall production, including error rate, of no more than about 9%. The Court declines to reach the remaining issues.

## V. The ALJ's Inadequately Supported 9% Pace Limitation Requires Reversal.

In Plaintiff's first argument, she largely challenges the ALJ's discussion and support for the RFC's limitation that "at the end of the workday or workweek, whichever is applicable, [Plaintiff] would have a reduction in overall production, including error rate, of no more than about 9% less (about 5 minutes an hour) than that [of] the average employee" ("9% Limitation") (AR, at 27). (Doc. 6, at 3-12). For the reasons stated below, the undersigned finds the ALJ did not adequately support this finding.

### A. The ALJ's Consideration of Plaintiff's Pace Limitations

The 9 % Limitation is a limitation on Plaintiff's ability to maintain pace. At Step Two, the ALJ found "no more than a 'moderate' limitation" in concentrating, persisting, or maintaining pace. (AR, at 26). The ALJ cited Plaintiff's reports that "she experiences a lack of concentration and a short attention span, and that if she does not write down spoken instructions, she is likely to get confused." (*Id.*) The ALJ observed that Plaintiff was "noted to be distractable, however on other occasions [she] was observed to be able to concentrate. The consultative psychologist noted [she] had a good ability to concentrate and persist and that she had a normal pace." (*Id.*) The ALJ also cited Plaintiff's reports "that on occasion panic attacks prevent her from going into work or require her to stop [what] she was previously doing." (*Id.*)

In the RFC discussion, the ALJ noted Plaintiff's testimony, which included having a major panic attack two to three times per month and a "small attack every day." (*Id.* at 28). She also testified that she experiences hallucinations and delusions, with stress exacerbating her symptoms. (*Id.*) She further stated that she would stay in bed for extended periods of time. (*Id.*) The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other record for the reasons explained in this decision." (*Id.*)

The ALJ found Plaintiff experiences "some limitation in her ability to perform work-related tasks due to her various mental impairments." (*Id.*) The ALJ noted Plaintiff's "persecutory delusions, paranoia, obsessive thoughts, and hallucinations clearly affect [her] ability to perform complex work and interact with the public," but that "during the

mental status examination with the consultative psychologist, she was observed to have a good ability to concentrate and persist, with normal pace." (*Id.*) The ALJ also noted that when Plaintiff "takes her medication as prescribed, she experiences relief" and cited reports from September 2023, July 2024, and August 2024 in support. (*Id.* at 29). The ALJ also noted "her symptoms are stable enough to only require regular monthly appointments. (*Id.*) The ALJ also noted that Plaintiff took care of pets, prepared meals, and performed household chores. (*Id.*)

The ALJ considered the report of the consultative psychologist, Dr. Melinda Shaver, and noted that she found Plaintiff had "normal pace[] and a good ability to remain on task. (*Id.* at 29). The ALJ also considered opinions from the state psychology consultants, whose opinions did not include the 9% Limitation. (*Id.* at 78, 88, 100). The ALJ found that the opinions were generally persuasive, but "further functional limitations were appropriate after obtaining additional evidence at the hearing level." (*Id.* at 29).

**B. The ALJ's 9% Limitation Is Not Properly Supported.**

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). This does not require that "that the decision include an item-by-item discussion of each RFC limitation with an explanation of the evidence relied upon to support that particular limitation," but it "must explain how the ambiguities were resolved and reveal the evidentiary basis of and rationale for the RFC assessed." *Luzier v. Astrue*, 2011 WL 2470243, at *7 (D. Kan. June 20, 2011); *see also Dianna C. v. Bisignano*,

2026 WL 851247, at *4 (D. Utah Mar. 27, 2026) ("In short, SSR 96-8p requires that an ALJ assess a claimant's RFC on a function-by-function basis, explain how the evidence supports each limitation, and provide a clear rationale resolving any conflicting evidence."). An explanation is "insufficient" when "it fails to link specific evidence to the ALJ's RFC" or requires the Court "to parse through the summarized evidence to find support for the ALJ's decision." *Peterson v. Saul*, 2020 WL 1911567, at *9 (D.N.M. Apr. 20, 2020). The Court is also guided by the principle that it "must exercise common sense . . . . [and] that [it] cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

Even with the exercise of common sense, the Court does not find the 9% Limitation to be supported by substantial evidence. The ALJ recognized Plaintiff's reports regarding her struggle to work, her lack of concentration and her short attention span, having large panic attacks at least monthly and small panic attacks daily that are exacerbated by stress, and having struggles handling stress. (AR, at 26, 28). But the ALJ did not fully accept these reports, finding her reports were not consistent with the medical evidence. The ALJ also noted one occasion – at Plaintiff's consultative examination – where she was observed to have a good ability to concentrate and persist with normal pace. (*Id.* at 28). But the ALJ found Plaintiff had up to moderate limitations in her ability to maintain pace. (*Id.* at 26). Thus, the ALJ's narrative discussion adequately explains that Plaintiff has some limitation in her ability to maintain pace, but it does not adequately explain the extent of the limitation.

District courts addressing specific percentage-based limitations have likewise found error when the ALJ failed to adequately explain the basis for the selected percentage. *See Robert F. v. Kijakazi*, 2022 WL 2763233, at *4 (S.D. Ind. July 15, 2022) ("The Court agrees with Claimant that the determination that he would be off-task nine percent of the time was 'seemingly pulled out of thin air with no basis in the evidence,' and 'appears to be a completely arbitrary estimation.'"); *Lovato v. Berryhill*, 2017 WL 2371096, at *4 (D. Or. May 9, 2017) ("Based on this record, the Court is unable to discern what substantial evidence supported the ALJ's conclusion that plaintiff would be off task 9% of the time, beyond the VE's testimony that a larger percentage would necessitate a finding of disability."), *adopted*, 2017 WL 2369377 (D. Or. May 31, 2017); *Oliverson v. Berryhill*, 2017 WL 1381814, at *4 (W.D. Wash. Apr. 17, 2017) ("The Court also agrees with plaintiff that the ALJ failed to point to any evidence in the record—or offer any explanation—to support the limitation of being off task for up to 9% of the time. Accordingly, the ALJ erred here[.]"). In short, while it is clear from the decision that the ALJ found Plaintiff had at least some limitation in the ability to maintain pace, the Court cannot discern the ALJ's reasoning as to how this evidence supports the 9% productivity limitation. This is error. *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) ("[I]t is reasonable nonetheless to require that the ALJ's decision be sufficiently articulated so that it is capable of meaningful review.").

The Commissioner argues that the 9% reduction in productivity does not need to be tethered to any medical opinion. (Doc. 11, at 13). This is correct. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a

direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). Indeed, it is "the ALJ, not a physician, [who] is charged with determining a claimant's RFC from the medical record." *Id.* (quoting *Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir.2004)). But the absence of a requirement that an assessed limitation correspond to a medical opinion does not relieve the ALJ of the obligation to adequately support the limitation with some sort of rationale.

The ALJ's error is not harmless. The VE testified that a hypothetical individual who produced 15% less than the average employee would be precluded from the occupations the ALJ found Plaintiff could perform. (AR, at 60). Thus, if the proper analysis led the ALJ to find Plaintiff was limited in pace to a greater extent than currently assessed, it is possible that the finding at Step Five that Plaintiff could perform jobs in the national economy would not be properly supported. Thus, the Court cannot conclude the error is harmless and reversal is appropriate.

On remand, the ALJ should properly explain the evidentiary basis of the 9% Limitation.

**VI. The Court Does Not Reach Plaintiff's Remaining Arguments.**

Because the above error mandates remand, the Court declines to address Plaintiff's other argument on appeal, as it "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**VII. Conclusion**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the Court

**REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

**IT IS SO ORDERED** this 17th day of September, 2026.

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE